O

# United States District Court
# Central District of California

| | |
|---|---|
| ACORN COMPOSITE CORPORATION; ACT LINDEN LLC,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>VIA OVERSEAS COMPANY, INC.; JIANQIANG GU; and DOES 1 through 10, inclusive,<br><br>　　　　　　　Defendants. | Case No. 2:15-cv-03098-ODW-JEM<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [20]** |

## I. INTRODUCTION

On April 24, 2015, Acorn Composite Corporation and ACT Linden LLC ("collectively, "Plaintiffs") filed a complaint alleging breach of contract, conversion, money had and received, negligent interference with prospective economic advantage and violations of California Business and Professional Code §17200 against Via Overseas Company, Inc. and Jianqiang Gu (collectively, "Defendants"). (ECF No. 1.) The clerk entered default as to Defendants on September 8, 2015. (ECF No. 15.) On October 21, 2015, Plaintiffs filed the present motion for default judgment against Defendants. Plaintiffs seek a judgment for damages arising out of the breach of contract in the amount of $702,744.57, plus prejudgment interest in the amount of

$66,307.35.[1] For the reasons discussed below, the Court **GRANTS** Plaintiffs' Motion for Default Judgment against Defendants Overseas Company, Inc., and Jianqiang Gu.

## II. FACTUAL BACKGROUND

Plaintiffs Acorn Composite Corporation, and its wholly-owned subsidiary ACT Lindent LLC operate to purchase goods for distribution to e-commerce retailers in China. (ECF No. 1, Complaint ("Compl.") ¶16.) Plaintiffs entered into an agreement with online retailer Worldmade International Group Limited ("Worldmade") whereby Worldmade would sell up to 2,000 units of iRobot Braava 380t Floor Mopping Robots ("iRobots") on behalf of Plaintiffs for 3% commission via an online promotional event scheduled for November 11, 2014. (Compl. ¶2; Patterson Decl. ¶3, 6.) Pursuant to this agreement, Worldmade accepted pre-orders for 2,000 iRobots through its online store Tmall.com ("Tmall"). (Compl. ¶18; Patterson Decl. ¶4.) Purchasers who did not receive their orders within 15 days of the promotional event would be able to cancel their orders and receive a refund and rebate from Tmall. (Patterson Decl. ¶5.)

Subsequently, Plaintiffs entered into a verbal agreement with Defendants for Defendants to acquire, sell and deliver to Plaintiffs 2,000 iRobots in time for the promotional event. (Compl. ¶17.)

In reliance on Defendants' promise to deliver the iRobots in time for the online promotional event, Plaintiffs wired Defendants $444,585.18 in three payments. (*Id.* ¶19.) The first payment of $38,158.73 occurred on or about September 16, 2014. (*Id.* ¶20.) The second payment of $184,133.86 occurred on or about October 15, 2014. (*Id.* ¶21.) The third payment of $222,292.59 occurred on or about October 20, 2014. (*Id.* ¶22.) The second and third payments are recorded in an invoice. (*Id.* ¶¶21, 22.)

Plaintiffs allege Defendants only delivered 208 iRobot units despite receiving payment. (*Id.* ¶23; Patterson Decl. ¶17.) In order to provide the promised number of

---

[1] Plaintiffs do not intend to seek relief under the additional claims in the Complaint if the Court grants the relief sought by the present motion for default judgment.

units to Worldmade and Tmall, Plaintiffs purchased additional iRobots from other vendors for $246,468.53. (Patterson Decl. ¶23.) However, Plaintiffs were not able to obtain a sufficient amount of iRobots in time for the online promotional event. (*Id.* ¶23.) Only 409 iRobot purchases were completed. (*Id.* ¶17.) The remaining 1,591 pre-orders were cancelled, and those customers received a refund and rebate from Tmall. (*Id.* ¶18.) Plaintiffs then spent an additional $2,176.55 to store the unsold units. (*Id.* ¶20.) Tmall penalized Worldmade in the amount of $81,715.09 for its failure to furnish the entire quantity of pre-ordered iRobots. (*Id.* ¶21.) Worldmade will deduct the Tmall penalty amount from Plaintiffs' revenues generated from the online promotional event. (*Id.* ¶22.)

As a result of Defendants' failure to perform, Plaintiffs contend they suffered monetary damage totaling $702,744.57. (Mtn. 6.)

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant default judgment after the Clerk enters default under 55(a). A district court has discretion whether to enter default judgment. *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980). Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917-19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.,* 559 F.2d 557, 560 (9th Cir. 1977)).

In exercising its discretion, a court must consider several factors (the "*Eitel* Factors"), including (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## IV. DISCUSSION

### A. Procedural Requirements

Before a court can enter default judgment against a defendant, the Plaintiff must satisfy the procedural requirements for default judgments set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1. Local Rule 55-1 requires that the movant submit a declaration establishing (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) that the defaulting party was properly served with notice. *Vogel v. Rite Aid Corp.,* 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014).

Plaintiffs have satisfied these requirements. The Clerk entered default on Defendants on September 8, 2015. (ECF No. 15.) Plaintiffs also establish that Defendants are not minors or infants, incompetent persons, in military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940. (ECF No. 20-1.) Defendants were served with notice of Motion for Default Judgment on October 21, 2015. (ECF No. 21.) Finally, Plaintiffs comply with Federal Rule of Civil Procedure 54(c) by requesting a remedy not different in kind from that prayed for in the Complaint. (ECF Nos. 1, 20.) Plaintiffs have thus complied with the procedural prerequisites for entry of default judgment. *See PepsiCo Inc., v. California Security Cans,* 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (finding that the procedural requirements of Rule 55 and Local Rule 55-1 had been met where plaintiffs addressed each required factor in their application for default judgment)

### B. *Eitel* Factors

The Court finds that the *Eitel* factors weigh in favor of default judgment. The Court will discuss each factor in turn.

#### 1. Plaintiffs Would Suffer Prejudice

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. *PepsiCo,* 238 F. Supp. 2d at 1177. Plaintiffs contend

that they will suffer significant prejudice if recovery were delayed due to the likelihood of the funds being transferred out of the country. (Mtn. 9) Defendants failed to appear and defend the allegations. Absent entry of default judgment, Plaintiffs will most likely be without recourse, given Defendants' unwillingness to cooperate and defend. Because Plaintiffs will suffer prejudice if he is without recourse against Defendants, this factor favors entry of default judgment.

### 2. Plaintiffs Brought Meritorious Claims and Plaintiff's Complaint was Sufficiently Pled

The second and third factors, the merits of Plaintiff's substantive claim and sufficiency of the Complaint, also support entry of default judgment. These two factors are commonly analyzed together. *See PepsiCo, Inc.,* 238 F. Supp. 2d at 1175 – 76. To succeed on a claim for breach of contract under California law, a plaintiff must plead and prove: (1) the existence of a contract; (2) plaintiff's performance or excuse of non-performance; (3) defendant's breach; and (4) damage to plaintiff resulting therefrom. *See McKell v. Washington Mut., Inc.,* 142 Cal. App. 4th 1457, 1489 (2006).

The Court finds that Plaintiffs have plead a sufficient breach of contract claim. Here, Plaintiffs allege (1) Plaintiffs and Defendants entered into three valid contracts. These agreements required Defendants to provide 2,000 units of iRobot Braava 380t Floor Mopping Robots in time for an online promotional event scheduled for November 11, 2014 (Compl. ¶¶2, 17, 19, 20, 21, 22); (2) Plaintiffs performed their obligations under these contracts by paying for 2,000 units in full, wiring a total of $444,585.18 to Defendant Via Overseas in September and October 2014 (Compl. ¶19); (3) Defendants breached the agreements by failing to provide all 2,000 units to Plaintiffs (Compl. ¶23); (4) Plaintiffs were damaged by paying for goods never received, losing expected profits, paying to acquire and store additional units, incurring penalties for missing a contractual deadline, and suffering reputational harm (Compl.¶23).

1  Here, because Plaintiffs' allegations are taken as true on default, the Court finds
2  that Plaintiff made out a prima facie breach of contract claim.

3        3. <u>The Amount at Stake Weighs in Favor of Default Judgment</u>

4  The fourth *Eitel* factor "considers the amount of money at stake in relation to
5  the seriousness of Defendant's conduct." *PepsiCo,* 238 F. Supp. 2d at 1176.
6  Plaintiffs seek $702, 744.57, plus prejudgment interest in the amount of $66,307.35.
7  (Mtn. 6.)

8  The applicable measure of damages for Plaintiffs' breach of contract claim
9  under California law is "the amount which will compensate the party aggrieved for all
10 the detriment proximately caused thereby, or which, in the ordinary course of things,
11 would be likely to result therefrom." Cal. Civ. Code §3300. *See Lewis Jorge Const.*
12 *Mgmt., Inc. v. Pomona Unified Sch. Dist.,* 34 Cal. 4th 960, 967-68 (2004).

13 Plaintiffs contend they are entitled to a total of $769,051.92. (Mtn. 6.)
14 $685,257.28 of the total is Plaintiffs' net loss resulting from Defendants breach of
15 contract. (*Id.*) $17,487.29 of the total is Plaintiffs' expected profits if Defendants had
16 not breached the contract. *Id.* The remaining $66,307.35 is derived from prejudgment
17 interest rate of 10% APR applicable on the damages. *Id.* Cal. Civ. Code. §§3287,
18 3289. *See also F.D.I.C. v. Quest F.S., Inc.,* No. SACV 10-00710-DOC, 2011 WL
19 2560428, at *5 (C.D. Cal. June 27, 2011). The Court concludes that the amount
20 sought is neither too large nor too unreasonable when balanced against Defendants'
21 actions. Given Defendants' failure to appear and defend, the Court finds that the
22 amount at stake weighs in favor of default judgment.

23       4. <u>There is No Possibility of Dispute as to Material Facts</u>

24 The next *Eitel* factor considers the possibility that material facts are disputed.
25 *PepsiCo,* 238 F. Supp. 2d at 1177; *Eitel,* 782 F.2d at 1471–72. Defendants failed to
26 appear and are therefore held to have admitted all material facts alleged in Plaintiff's
27 pleading. *See PepsiCo,* 238 F. Supp. 2d at 1177 ("Upon entry of default, all well-
28 pleaded facts in the complaint are taken as true, except those relating to damages").

Since Plaintiff's factual allegations are presumed true and Defendants failed to oppose the motion, no factual disputes exist that would preclude the entry of default judgment. This factor, therefore, favors the entry of default judgment against Defendants.

### 5. There is Little Possibility Default was Due to Excusable Neglect

Defendants' default does not appear to be a result of excusable neglect. Rather, Defendants were properly served with the Complaint on June 11, 2015. (ECF No. 12.) In addition, even after Plaintiff properly served Defendants with the Request for Entry of Default, Defendants have failed to appear in this action or otherwise offer any defense. (ECF No. 21.) Other courts recognize that a defendant's failure to respond after receiving notice is unlikely to constitute excusable neglect. *See e.g., Craigslist, Inc. v. Kerbel,* No. 11-3309, 2012 U.S. Dist. LEXIS 108573, at *23 (N.D. Cal. Aug. 2, 2012) (noting the unlikeliness that the defendant's default was due to excusable neglect, "especially when Plaintiffs served not only the summons and complaint, but also the request for entry of default on the Defendant but still received no response"). Accordingly, the sixth *Eitel* factor favors default judgment.

### 6. Policy for Deciding on the Merits Weighs in Favor of Granting Default Judgment

In *Eitel*, the court maintained that "[c]ases should be decided upon their merits whenever reasonably possible." 782 F.2d at 1472. However, where, as in the case at bar, a defendant fails to answer the plaintiff's complaint, "a decision on the merits [is] impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177 ("Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."). Accordingly, the Court finds the seventh *Eitel* factor does not preclude default judgment.

///

///

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's Motion for Default Judgment against Defendants' Overseas Company, Inc., and Jianqiang Gu. The Court also awards $702,744.57 in damages, plus prejudgment interest in the amount of $67,960.13.

**IT IS SO ORDERED.**

December 22, 2015

_____
        **OTIS D. WRIGHT, II**
  **UNITED STATES DISTRICT JUDGE**